UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------

ALBA L. CORRALES,

                    Plaintiff,                    No. 22-CV-3219 (LAP)

     -against-                                    OPINION & ORDER

MONTEFIORE MEDICAL CENTER,

                    Defendant.

------------------------------------

LORETTA A. PRESKA, Senior United States District Judge:

        Before the Court is Defendant Montefiore Medical Center's

("Defendant" or "Montefiore") motion to dismiss pursuant to Fed.

R. Civ. P. 12(b)(6).[1]  Plaintiff Alba L. Corrales ("Plaintiff" or

"Corrales") opposes the motion.[2]  The Court has also reviewed the

parties' letters regarding ongoing state court cases related to

the New York State Department of Health's Coronavirus (COVID-19)

vaccination mandate ("DOH Mandate" or "Section 2.61").[3]  For the

_____

[1] (See Notice of Motion to Dismiss ("Def. MTD"), dated September
9, 2022 [dkt. no. 16]; Memorandum of Law in Support of
Defendant's Motion for Dismissal of Plaintiff's Amended
Complaint ("Def. Br."), dated September 9, 2022 [dkt. no. 17];
Reply Memorandum of Law in Support of Defendant's Motion for
Dismissal of Plaintiff's Complaint ("Def. Reply"), dated October
7, 2022 [dkt. no. 20].)

[2] (See Plaintiff's Memorandum of Law in Opposition to Defendant's
Renewed Motion to Dismiss ("Pl. Opp."), dated September 23, 2022
[dkt. no. 19].)

[3] (See Letter of Steven M. Warshawsky, dated January 15, 2023
[dkt. no. 21]; Letter of Jean L. Schmidt, dated January 20, 2023
[dkt. no. 22]; Letter of Jean L. Schmidt, dated January 25, 2023
[dkt. no. 23].)

reasons below, the motion to dismiss is <u>GRANTED</u> without prejudice.

I.   **<u>Background</u>**

A. **<u>Procedural Background</u>**

Corrales commenced the instant action on April 20, 2022, alleging violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u> ("Title VII").[4]  On June 21, 2022, Montefiore filed a motion to dismiss Corrales's complaint under Rule 12(b)(6).[5]  On August 8, 2022, Corrales filed a motion for leave to file an amended complaint before the motion to dismiss was fully briefed, pursuant to Fed. R. Civ. P. 15(a)(2).[6]  The Court granted the motion,[7] and on August 12, 2022, Corrales filed an amended complaint, alleging Montefiore's violation of: (1) Title VII; (2) New York State Executive Law § 290 <u>et seq.</u>

---

[4] (<u>See</u> Complaint, dated April 20, 2022 [dkt. no. 1].)

[5] (<u>See</u> Notice of Motion to Dismiss, dated June 21, 2022 [dkt. no. 6]; Memorandum of Law in Support of Defendant's Motion for Dismissal of Plaintiff's Complaint, dated June 21, 2022 [dkt. no. 7].)

[6] (<u>See</u> Motion for Leave to File Amended Complaint ("Pl. Mot."), dated August 4, 2022 [dkt. no. 10].)

[7] (<u>See</u> Order, dated August 8, 2022 [dkt. no. 11].)

("NYSHRL"); and (3) New York City Administrative Code § 8-101 et seq. ("NYCHRL").[8]

On September 9, 2022, Montefiore filed a motion to dismiss the Amended Complaint. (See dkt. nos. 16, 17.) Corrales opposed the motion (see dkt. no. 19), and Montefiore filed a reply on October 7, 2022 (see dkt. no. 20).

## B. **Factual Background**

Corrales filed this action against her former employer, Montefiore, a domestic not-for-profit corporation. (AC ¶ 3.) Corrales alleges that Montefiore failed to accommodate her sincerely held religious objection to Montefiore's mandatory COVID-19 vaccination policy by failing to grant her a religious exemption. (Id. ¶ 1.) Corrales further alleges that because Montefiore wrongly denied her requested religious exemption, Montefiore illegally terminated her employment. (Id.)

Corrales was hired by Montefiore on or about January 28, 2019, as a receptionist in the executive offices of Montefiore. (Id. ¶¶ 13, 16.) Prior to her being hired, Montefiore granted Corrales a religious exemption for the flu vaccine. (Id. ¶ 15.) As support for this religious exemption, Corrales had submitted a letter of support from the elder of her congregation, 12

---

[8] (See Amended Complaint ("AC"), dated August 12, 2022 [dkt. no. 13].)

3

Tribes of Israel Congregation ("January 2019 Letter").  (Id. ¶ 14.)  Two years later, in or about February 2021, Corrales was promoted to the position of Assistant to the President.  (Id. ¶ 17.)  In this role, Corrales worked in an office with other staff and did not interact with hospital patients.  (Id. ¶ 18.)

On or about August 26, 2021, the New York State Department of Health issued the DOH Mandate, codified at N.Y. COMP. CODES R. & REGS. tit. 10, § 2.61.  (Id. ¶ 21.)  In response, on or about September 10, 2021, Corrales was informed that all Montefiore employees were required to receive the COVID-19 vaccination. (Id. ¶ 20.)  While the DOH Mandate did not include a provision for granting religious exemptions, Montefiore provided a procedure through which employees could request religious exemptions to the COVID-19 vaccination policy.  (Id. ¶ 22.)

On September 15, 2021, Corrales messaged Sheila McGrath, Assistant Vice President of Human Resources, regarding her desire to obtain a religious exemption to the COVID-19 vaccination policy.  (Id. ¶ 23.)  In response, McGrath emailed Corrales, acknowledging receipt of the request and informing Corrales that "Montefiore may ask you to provide additional information" and "a decision on your request will be made on a future date . . . pending further guidance from New York State." (Id. ¶ 24 (alteration in original).)

On September 22, 2021, McGrath emailed an exemption request form to Corrales, which Corrales returned on September 23, 2021. (Id. ¶ 25.)  The form explained that "subject to further guidance from the state or applicable courts, Montefiore will not enforce the Mandatory COVID-19 Vaccination Policy for employees that have submitted this religious exemption request form."  (Id. ¶ 29.)  The form further noted that such employees "must comply with submission of weekly PCR testing and all COVID-19 protocol."  (Id.)  In addition, the form provided that final decisions would be made when further guidance was issued and, if Montefiore determined a request was not of a religious nature, the request would be denied.  (Id. ¶ 30.)

In her personal statement for the religious exemption, Corrales explained that taking the COVID-19 vaccine would be in violation of her faith.  (Id. ¶¶ 26-28.)  She wrote:

> With COVID vaccines, we learned ABORTED FETAL CELL LINES are used in production which by association defiles the vaccine automatically.  God says the life of all flesh is in the blood (Lev 17:11) to inject this directly into the bloodstream would TAINT the blood. . . . The blood would REMAIN contaminated and defiled (see Lev 17:16).

(Id. ¶ 26.)

Corrales supported her application with the January 2019 Letter from the elder of her congregation and a new letter from the elder, dated September 24, 2021 ("September 2021 Letter"). (Id. ¶ 27.)  In the September 2021 Letter, the elder explained:

> According to the Bible we are not to defile our body
> which is the temple of God with uncleanness.   All
> immunization shots contain ingredients that derives
> [sic] from animals that are considered by God as <u>unclean</u>.
> We are told by God that if we observe his commandments,
> he would not put any diseases upon us that comes from
> these unclean animals. . . . Aborted fetal cells are
> also uncleanness.

(<u>Id.</u> (emphasis in original).)   The elder further explained
that "we are able to comply by providing blood or saliva
but not by putting something in our bodies."   (<u>Id.</u> ¶ 28.)

On September 29, 2021, Corrales was notified via email and
without explanation that her request for a religious exemption
to the COVID-19 vaccination requirement was denied.   (<u>Id.</u> ¶ 31.)
The email advised Corrales that she was "being placed off duty
as of 5:00 PM tomorrow, Thursday September 30th, unless you have
proof of a 1st dose of vaccination for COVID19."   (<u>Id.</u> ¶ 32.)
The email further noted that Corrales was being placed on unpaid
leave until October 12, 2021.   (<u>Id.</u>)   In response, on September
30, 2021, Corrales emailed the Vaccine Religious Exemption
Office, seeking an explanation for her denial and the criteria
involved in the determination.   (<u>Id.</u> ¶¶ 33-34.)

On October 8, 2021, Corrales received a response that was
addressed to "Dear employee" and explained that Montefiore
denied her exemption request because "it was not of a religious
nature; you failed to demonstrate your request was based upon a
sincerely held religious belief, practice or observance; or your

request was incomplete." (<u>Id.</u> ¶ 35.)  The letter did not state that Corrales's exemption was denied because it would have caused Montefiore undue hardship. (<u>Id.</u> ¶ 37.)  In addition, the letter advised Corrales that she could "submit further information and/or documentation in support of [her] religious exemption." (<u>Id.</u> ¶ 38.)

Corrales provided additional information regarding her request for a religious exemption in an email dated October 11, 2021. (<u>Id.</u> ¶ 39.)  In part, Corrales explained that "my belief . . . is that abortion is murder. . . .  The COVID-19 vaccines produced by Johnson & Johnson contain aborted fetal cells.  The other producers (Pfizer and Moderna), use aborted fetal cells in their production and testing." (<u>Id.</u> (second alteration in original).) On October 22, 2021, Corrales received another letter from Montefiore, again addressed to "Dear employee," explaining that her additional information was reviewed and that her request was denied. (<u>Id.</u> ¶ 40.)  The letter explained that her "exemption request is denied because it is not of a religious nature and/or you failed to demonstrate your request was based upon a sincerely held religious belief, practice or observance." (<u>Id.</u>)

On November 5, 2021, after continuing to refuse the COVID-19 vaccination, Corrales received a letter terminating her employment, effective October 30, 2021. (<u>Id.</u> ¶ 47.)

On or about February 4, 2022, Corrales filed a charge of discrimination against Montefiore with the U.S. Equal Employment Opportunity Commission ("EEOC").  (Id. ¶ 8.)  On February 4, 2022, the EEOC issued a Notice of Right to Sue.  (See dkt. no. 13-1.)  Corrales filed the instant action within 90 days of receipt of the Notice of Right to Sue.  (AC ¶ 10.)

## II.  **Legal Standard**

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In assessing a Rule 12(b)(6) motion to dismiss, the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). However, the same does not apply to "legal conclusions," Iqbal, 556 U.S. at 678, so the Court will not accept as true "allegations that amount to mere 'legal conclusions.'"

<u>Whiteside v. Hover-Davis, Inc.</u>, 995 F.3d 315, 321 (2d Cir. 2021) (quoting <u>Iqbal</u>, 556 U.S. at 678).

### III. <u>Discussion</u>

Montefiore asserts deficiencies in Corrales's pleadings regarding each of her Title VII, NYSHRL, and NYCHRL claims. (<u>See</u> Def. Br.)  In particular, Montefiore asserts that Corrales's claims fail because Montefiore was required to comply with the DOH Mandate, which does not entitle healthcare workers to religious exemptions.  (<u>Id.</u> at 1-2.)  In addition, Montefiore asserts that Corrales's claims fail because accommodating Corrales's religious beliefs or practices would have caused Montefiore undue hardship.  (<u>Id.</u> at 2.)

#### A. <u>New Allegations in the Amended Complaint</u>

As an initial matter, Montefiore argues that Corrales's Amended Complaint "contains approximately thirty new allegations, none of which are 'integral' to her Amended Complaint."  (<u>Id.</u> at 6.)  Montefiore then argues that because the new allegations are not integral, "they should be disregarded."  (<u>Id.</u>)  This argument is misplaced because the new allegations are contained on the face of the complaint itself.

When evaluating a Rule 12(b)(6) motion, a district court's consideration is confined to the "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which

9

judicial notice may be taken." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d. Cir. 2016) (quoting Concord Assocs., L.P. v. Ent. Props. Tr., 817 F.3d 46, 51 n.2 (2d Cir. 2016)) (cleaned up). In some instances, a document that is not expressly incorporated by reference in the complaint may be considered on a motion to dismiss where that document is "integral." Goel, 820 F.3d at 559. "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)). In the instant action, according to Montefiore, because the new allegations are not "integral" to the Amended Complaint, the Court should not consider those allegations in evaluating the motion to dismiss.

However, Corrales's new allegations are contained on the face of the Amended Complaint itself. "It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977)); see Ibela v. Allied Universal, No. 21-1995-CV, 2022 WL 1418886, at *1 (2d Cir. May 5, 2022) (denying review of Title VII hostile work environment and retaliation claims where plaintiff failed to re-assert them in amended complaint); Shannon v. Venettozzi, 749 F. App'x 10, 13 (2d Cir. 2018); (denying consideration of

10

request for declaratory and injunctive relief where such earlier requests were not retained in amended complaint).

Here, Corrales's motion for leave to file an amended complaint (dkt. no. 10) was granted (dkt. no. 11).  Corrales subsequently filed the Amended Complaint (dkt. no. 13), which "renders [her original complaint] of no legal effect." Shields, 25 F.3d at 1128.  The test for determining whether a document external to a complaint is integral does not apply to the new allegations themselves, and Defendants cite no authority for striking allegations "not integral to the complaint." Accordingly, the Court will consider the new allegations in the Amended Complaint.  To the extent the new allegations reference external documents not appended to the complaint or expressly incorporated by reference, the Court shall take judicial notice that such documents were published but will not consider their contents as to the truth of the information they present. See, e.g., Karol v. City of New York, 396 F. Supp. 3d 309, 318 (S.D.N.Y. 2019).

### B. <u>Claims Arising Under Title VII and the NYSHRL[9]</u>

Under Title VII, it is unlawful for "an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1).  Title VII defines "religion" as including "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).  In addition, Title VII imposes an affirmative obligation on the employer to accommodate an employee's religious observance or practice unless doing so would cause "undue hardship on the conduct of the employer's business."  <u>Id.</u>; <u>see also</u> <u>Ansonia Bd. of Educ. v. Philbrook</u>, 479 U.S. 60, 69 (1986) (providing that "an employer has met its obligation under § 701(j) when it demonstrates that it has offered a reasonable accommodation to the employee").  The NYSHRL provides substantially the same language.[10]  Thus, when an

---

[9] The Court of Appeals treats discrimination claims arising under Title VII and NYSHRL as "analytically identical, applying the same standard of proof to both claims." <u>Lenzi v. Systemax, Inc</u>, 944 F.3d 97, 107 n.7 (2d Cir. 2019) (quoting <u>Salamon v. Our Lady Victory Hosp.</u>, 514 F.3d 217, 226 n.9 (2d Cir. 2008)).

[10] New York Executive Law § 296(1)(a) provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's . . . creed . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment." Similarly, New York Executive Law § 296(10)(a) provides: (footnote continued)

employee has a genuine religious practice or observance, the
"employer, once notified, must offer the aggrieved employee a
reasonable accommodation, unless doing so would cause the
employer to suffer an undue hardship." Cosme v. Henderson, 287
F.3d 152, 158 (2d Cir. 2002); accord Marte v. Montefiore Med.
Ctr., No. 22-CV-03491, 2022 WL 7059182, at *3 (S.D.N.Y. Oct. 12,
2022).  An accommodation causes undue hardship where it "results
in 'more than a de minimis cost' to the employer." Ansonia, 479
U.S. at 67 (quoting Trans World Airlines, Inc. v. Hardison, 432
U.S. 63, 84 (1977)).

    The Court of Appeals has recognized a two-step inquiry in
analyzing failure-to-accommodate religious discrimination claims
arising under Title VII.  Courts must determine whether an
employee established a prima facie case for failure to
accommodate the employee's religion. Baker v. Home Depot, 445
F.3d 541, 546 (2d Cir. 2006); Knight v. Connecticut Dept. Pub.

--------

(footnote continued)

> It shall be an unlawful discriminatory practice for any
> employer . . . to impose upon a person as a condition of
> . . . retaining employment . . . any  terms or conditions
> that would require such person to violate or forego a
> sincerely held practice of his or her religion, . . .
> unless, after engaging in a bona fide effort, the
> employer demonstrates that it is unable to reasonably
> accommodate the employee's or prospective employee's
> sincerely held religious observance or practice without
> undue  hardship  on  the  conduct  of  the  employer's
> business.

<u>Health</u>, 275 F.3d 156, 167 (2d Cir. 2001).  If the employee has made the <u>prima facie</u> case and the employer has not reasonably accommodated the employee, "the burden then shifts to the employer to show it could not accommodate the employee's religious beliefs without undue hardship."  <u>Knight</u>, 275 F.3d at 167; <u>accord</u> <u>Baker</u>, 445 F.3d at 546.

To establish a <u>prima facie</u> case under Title VII, employees must show "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement."  <u>Knight</u>, 275 F.3d at 167; <u>see also</u> <u>Baker</u>, 445 F.3d at 546.

### i.   <u>Prima Facie Case for Religious Discrimination</u>

Corrales argues that she made a <u>prima facie</u> case of a discriminatory failure to accommodate.  (Pl. Opp. at 4.) Montefiore "does not dispute that [Corrales] was entitled to a reasonable accommodation" (Def. Reply at 1), implying that Montefiore concedes Corrales made a <u>prima facie</u> case under Title VII.  In accordance with both parties, and drawing all reasonable inferences in Corrales's favor, the Court finds that Corrales has alleged sufficient facts to make a <u>prima facie</u> case for employment discrimination under Title VII.  <u>See</u> <u>McCarthy</u>, 482 F.3d at 191.

First, Corrales alleged that she had a bona fide religious belief conflicting with the COVID-19 vaccination requirement. Corrales alleged that she is a member of the 12 Tribes of Israel Congregation.  (AC ¶ 14.)  She alleged that her Christian faith does not allow "defilement" and that the "uncleanness involved in the manufacturing" of the vaccines would cause her to "defile" herself.  (Id. ¶ 26.)  Finally, the elder of her congregation re-emphasized her religious beliefs regarding immunizations in his two letters, the January 2019 Letter and September 2021 Letter.  (Id. ¶ 27.)

Second, Corrales alleged that she informed Montefiore of this religious belief.  She first informed Montefiore of her religious objection to immunizations in 2019, before she was hired.  (Id. ¶ 14.)  In addition, Corrales alleged that she notified Montefiore about her particular religious objections to the COVID-19 vaccine by notifying McGrath of her desire to request a religious exemption to the vaccination policy.  (Id. ¶ 23.)  McGrath subsequently acknowledged Corrales's request in an email.  (Id. ¶ 24.)  Corrales further alleged that she informed Montefiore of her religious belief in her application for a religious exemption.  Corrales delineated her beliefs in a personal statement attached to the application and in the two letters of support she received from the elder of her congregation.  (Id. ¶¶ 26-28.)  Finally, Corrales alleged that,

upon Montefiore's request, she submitted additional documentation regarding her religious objections to the COVID-19 vaccination.  (Id. ¶ 39.)

Third, Corrales alleged that she was disciplined for failure to comply with the vaccination requirement.  The Court of Appeals has provided that adverse employment actions under Title VII's substantive anti-discrimination provisions are generally characterized as "materially adverse change[s] in the terms and conditions of employment," including "termination of employment."  Bowles v. N.Y.C. Transit Auth., 285 F. App'x 812, 814 (2d Cir. 2008) (quoting Zelnik v. Fashion Inst. Tech., 464 F.3d 217, 225 (2d Cir. 2006)).  Here, Corrales alleged that because she continued to refuse the COVID-19 vaccination, her employment was terminated on November 5, 2021.  (AC ¶ 47.) Thus, drawing all reasonable inferences in the nonmovant's favor, the Court finds that Corrales made a prima facie case for religious discrimination under Title VII.  See McCarthy, 482 F.3d at 191.

### ii.  The Employer's Burden to Provide a Reasonable Accommodation or Show Undue Hardship

Because Corrales made out a prima facie case, the question is whether Montefiore has alleged that it could not accommodate Corrales's request for a religious exemption without undue hardship.  See Knight, 275 F.3d at 167.  Corrales argues that Montefiore violated Title VII by "denying her request for a

religious exemption . . . and terminating her employment."  (AC ¶ 87.)  She asserts that granting a religious exemption would not have violated Section 2.61 because it "neither provides for religious exemptions nor prohibits religious exemptions."  (Pl. Opp. at 5.)  Moreover, Corrales writes that a religious exemption would not have caused undue hardship because it is "pure speculation and fear-mongering" that granting the exemption would have exposed its staff and visitors to the risks of COVID-19.  (Id. at 6.)

Montefiore argues that Corrales's Title VII claim fails because Title VII does not entitle Corrales to an exemption from Section 2.61.  (Def. Br. at 6.)  In addition, Montefiore asserts that granting Corrales a religious exemption would have caused it undue hardship because it would have required Montefiore to violate state law.  (Id. at 9.)  Montefiore further asserts that granting the religious exemption would have caused undue hardship because it would have exposed its staff and visitors to the risks of a life-threatening disease.  (Id. at 11.)

### 1. **Blanket Religious Exemptions Are Foreclosed Under Section 2.61**

Section 2.61 provides that all "[c]overed entities shall continuously require personnel to be fully vaccinated against COVID-19."  N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61.  The Rule defines "personnel" as "all persons employed or affiliated with

a covered entity . . . who engage in activities such that if
they were infected with COVID-19, they could potentially expose
other covered personnel, patients or residents to the disease."
Id.  While Section 2.61 provides medical exemptions, it does not
provide religious exemptions.  See id.; We the Patriots USA,
Inc. v. Hochul (We the Patriots I), 17 F.4th 266, 275 (2d Cir.
2021), opinion clarified, 17 F.4th 368 (2d Cir. 2021).

Contrary to Corrales's suggestion, the Court of Appeals has
held that while Section 2.61 "does not bar an employer from
providing an employee with a reasonable accommodation that
removes the individual from the scope of the Rule," Section 2.61
does bar religious exemptions. We the Patriots I, 17 F.4th at
292.  In other words, while employees may be entitled to
reasonable religious accommodations that do not cause the
employer undue hardship, they are not entitled to a "blanket
religious exemption allowing them to continue working at their
current positions unvaccinated."  Id.; see also We the Patriots
USA, Inc. v. Hochul (We the Patriots II), 17 F.4th 369, 370 (2d
Cir. 2021).

Under Title VII, an accommodation causes undue hardship
where it "results in 'more than a de minimis cost' to the
employer."  Ansonia, 479 U.S. at 67 (quoting Hardison, 432 U.S.
at 84).  The Court of Appeals has provided that dismissal of an
employee's Title VII claim because of undue hardship is

18

appropriate where, in granting the employee's accommodation request, the employer would be required to violate state or federal law.  See Lowman v. NVI LLC, 821 F. App'x 29, 32 (2d Cir. 2020) (affirming dismissal of Title VII claim where employee's requested accommodation would require employer to violate the Internal Revenue Code); see also Bey v. City of New York, 999 F.3d 157, 170 (2d Cir. 2021) (affirming dismissal of Title VII claim where employee's requested accommodation would require employer to "depart from binding federal regulations").

### 2. **Montefiore Could Not Have Granted Corrales's Requested Religious Exemption Without Undue Hardship**

Montefiore could not have granted Corrales's requested exemption without undue hardship because granting the exemption would have required Montefiore to violate binding law.  Here, Corrales qualified as "personnel" within the meaning of Section 2.61 because she worked for a covered entity "in an office with other staff members."  (AC ¶ 18.)  The sole religious accommodation Corrales sought was a "blanket exemption" from the COVID-19 vaccine requirement, We the Patriots I, 17 F.4th at 292, while continuing her "regular employment" (Pl. Opp. at 2).  In other words, Corrales sought an exemption in which she would continue to be covered as "personnel" within the meaning of Section 2.61 after her exemption was granted.  Accordingly, granting Corrales's

requested exemption would have required Montefiore to violate Section 2.61, causing it undue hardship.

This conclusion is consistent with similar cases in district courts throughout the circuit.  For example, in <u>Riley v. N.Y.C. Health & Hosps. Corp</u>, the district court dismissed the Title VII claims of a nurse who sought a "blanket exemption" to the COVID-19 vaccination requirement, in contravention of binding law.  No. 22-CV-2736, 2023 WL 2118073, at *4 (S.D.N.Y. Feb. 17, 2023).  Additionally, in <u>Does 1-2 v. Hochul</u>, the court dismissed plaintiffs' Title VII claims where plaintiffs sought to "continue to provide the healthcare they have provided to patients for their entire careers" because it would have required their employer to violate state law.  No. 21-CV-5067, 2022 WL 4637843, at *15 (E.D.N.Y. Sept. 30, 2022).  In <u>Marte</u>, the Title VII claims of a physician's assistant were dismissed on similar grounds. 2022 WL 7059182, at *4.

Moreover, Corrales sought only a blanket exemption; she did not seek any alternative religious accommodation, such as telework, that would have removed her from the scope of Section 2.61.  In her Amended Complaint, Corrales only based her claims on Montefiore's "denying her request for a religious exemption." (AC at ¶¶ 87, 91, and 95.) In her opposition, Corrales specified that the right she was asserting was

> the right to be exempted from the mandatory COVID-19
> vaccination policy, which conflicts with her sincerely
> held religious beliefs, and to be allowed to continue
> her regular employment while following the same health
> and safety protocols – testing, masking, social
> distancing, and sanitizing – that were in place before
> the vaccination policy was announced.

(Pl. Opp. at 2.)  As We the Patriots I makes clear, "Title VII does not require covered entities to provide the accommodation that Plaintiffs prefer — in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated." 17 F.4th at 292.  Courts in Riley, Marte, and Does 1-2 all dismissed similar claims because granting the plaintiffs' only requested exemptions would have required the defendants to violate state law, thus imposing an undue hardship.  For these reasons, Corrales's Title VII and NYSHRL claims are DISMISSED without prejudice.

### C. Claim Arising Under the NYCHRL

The NYCHRL provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of the actual or perceived . . . creed . . . of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin Code § 8-107(1).  It further provides that:

> [i]t shall be an unlawful discriminatory practice for an
> employer . . . to impose upon a person as a condition of
> obtaining or retaining employment any terms or
> conditions, compliance with which would require such
> person to violate, or forego a practice of, such person's

21

creed or religion . . . and the employer shall make
reasonable accommodation to the religious needs of such
person.

Id. § 8-107(3). Under the NYCHRL, a reasonable

accommodation is an "accommodation to an employee's or

prospective employee's religious observance or practice"

that does not cause the employer "undue hardship."  Id.

In analyzing NYCHRL failure to accommodate claims, the same

burden shifting framework used in Title VII claims is applied.

See White v. Andy Frain Servs., Inc., 629 F. App'x 131, 134 (2d

Cir. 2015); see also Dao v. Oppenheimer Funds, Inc., 515 F.

App'x 31, 31-32 (2d Cir. 2013); Melman v. Montefiore Med. Ctr.,

946 N.Y.S.2d 27, 30-31 (N.Y. App. Div. 2012).  Thus, to make a

prima facie case, the plaintiff must prove: "(1) he has a bona

fide religious belief that conflicts with an employment

requirement, (2) he informed the employer of the belief, and

(3) he was disciplined for failure to comply with the

requirement."  White, 629 F. App'x at 134.

Once the plaintiff has made a prima facie case, the

employer has the burden of proof to show that it could not

provide a reasonable accommodation to the religious need of the

employee without undue hardship.  N.Y.C. Admin Code § 8-107(3).

The NYCHRL defines "undue hardship" as an "accommodation

requiring significant expense or difficulty" which includes

"significant interference with the safe or efficient operation of the workplace."  Id.

Although the burden shifting framework used in Title VII claims applies to NYCHRL claims, "courts must analyze NYCHRL claims separately and independently from any federal and state law claims."  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013).  The provisions of the NYCHRL should be construed "broadly in favor of discrimination plaintiffs."  Id. at 109 (quoting Albunio v. City of New York, 16 N.Y.3d 472, 477-78 (N.Y. 2011)).  Accordingly, even where "challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards."  Id. (citation omitted).

For the same reasons discussed above, Corrales made a prima facie case for failure to accommodate her religious beliefs.  Thus, the inquiry turns to the question of undue hardship.  For the same reasons discussed above, Montefiore has shown that it could not provide Corrales with a religious exemption without undue hardship, because doing so would have caused Montefiore to violate state law.  For these reasons, Corrales's NYCHRL claim is DISMISSED without prejudice.

IV.   **Conclusion**

    For the reasons above, Montefiore's motion to dismiss for
failure to state a claim is <u>GRANTED</u> without prejudice.
Plaintiff may move to replead, providing a copy of the proposed
new pleading.

    The Clerk of the Court is ordered to close case number 22-
CV-3219 and any open motions.


**SO ORDERED.**

Dated:    March 30, 2023
          New York, New York

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge

24